UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

**FILED**
JAN 27 2005
CLERK

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, ) ) ) | Civ. 03-5113 |
| Plaintiff, ) ) | |
| vs. ) ) | **MEMORANDUM OPINION AND ORDER** |
| FEDERATED MUTUAL INSURANCE COMPANY, a/k/a FEDERATED INSURANCE, ) ) ) ) | |
| Defendant. ) | |

Pending before the Court is a Motion for Summary Judgment [doc. #22] presented by Federated Mutual Insurance Company ("Federated"), and a Motion for Summary Judgment [doc. #27] presented by State Farm Fire and Casualty Company ("State Farm"). Briefing is complete and the Court is prepared to dispose of these related motions.

## INTRODUCTION

In November 1994, Federated issued a Business Errors and Omissions Claims Made Policy to Curt Wieman ("Wieman"). This "claims made" policy, with a $500,000 limit per claim, was renewed annually through November 1999. State Farm subsequently insured Wieman from October 1999 through October 2001, under a Contractor's Policy. This "occurrence" policy provided $1,000,000 in business liability coverage. In this action, State Farm seeks a declaration from the Court that coverage exists under the policy issued by Federated for defense costs incurred and settlement funds paid by State Farm to resolve a lawsuit against Wieman. State Farm seeks judgment in its favor in the amount of $138,654.33. The Court has jurisdiction over these diverse parties pursuant to 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

The parties have filed a "Joint Statement of Undisputed Facts" [doc. #26], which the Court hereby incorporates by this reference. The Court will, however, briefly summarize the facts underlying this lawsuit. The disputed provisions of Federated's insurance policy will be addressed and discussed within the Court's legal analysis.

Construction began in 1992 on the Mineral Palace Hotel, located in Deadwood, South Dakota. The original owner of the hotel was the Mineral Palace Limited Partnership ("the MPLP"). The MPLP utilized Sun-Rise Construction, Inc. ("Sun-Rise") and Lloyd-Lagow Construction Company ("Lloyd-Lagow") to serve as the general contractors for the building project. Sun-Rise and Lloyd-Lagow entered into a joint venture for the purpose of constructing the hotel. Wieman submitted to the joint venture a bid to install the heating, ventilation and air-conditioning ("HVAC") system. Wieman planned to install a split-heat pump system, which required drainage lines between the units and the sewer for the disposal of accumulated moisture. The joint venture accepted Wieman's bid.

Wieman experienced numerous difficulties, several of which related to the drainage of moisture from the units, while installing the HVAC system in the hotel. He advised the joint venture of the problems but was instructed to resolve the issues. Once installation was complete, Wieman tested the drainage lines. After the hotel opened in 1993, however, it began experiencing problems with the HVAC system. The hotel documented 142 instances of HVAC related issues from April 1993 to September 1994. The problems were primarily related to leaking drainage lines, failing compressors, and the freezing of units. Although there was some dispute concerning the cause of the problems, Wieman made numerous service calls during the

first year of the operation of the hotel pursuant to a warranty agreement. Often, the service calls involved cleaning the HVAC units' filters and removing lint which plugged the drainage lines.

After the expiration of the warranty, Wieman ceased assisting the hotel without further compensation and the hotel hired Mel Soffra ("Soffra") to maintain and repair the HVAC system. Soffra worked at the hotel on nearly a daily basis and eventually produced a report which listed the alleged problems with the HVAC system. Soffra also prepared a bid which estimated the cost of complete repair at approximately $130,000. The report was provided to Mike Tennyson ("Tennyson"), the president of Sun-Rise. On December 19, 1995, Tennyson sent Wieman a letter which outlined the problems with the HVAC system and estimated the cost of repair. The letter requested a response and mentioned the possibility of litigation. This was the first notification received by Wieman which advised of alleged defects in his work. In May 1996, the manufacturer of the HVAC units inspected the system with a representative of the MPLP, Wieman, and Tennyson. The manufacturer concluded the problems were caused by the hotels failure to properly maintain the filters in the HVAC units.

In November 2000, the MPLP filed a complaint in a South Dakota Circuit Court against Sun-Rise and Lloyd-Lagow. One claim alleged the HVAC system was defective and inoperable. In April 2001, Lloyd-Lagow and Sun-Rise initiated a third-party action against Wieman and various other subcontractors seeking indemnification for damages awarded to the MPLP as a result of defects in the HVAC system. Wieman notified his insurer State Farm, who defended him under a reservation of rights. Through his attorney, Wieman sought coverage from Federated in October 1999. Federated subsequently denied coverage.

During the course of the litigation, the MPLP installed a new HVAC system in the hotel at a cost of $343,767.83. In April 2003, the parties to the state court lawsuit ended their dispute with settlement. State Farm contributed $65,000 to settle the allegations against Wieman and the parties to this dispute believe the amount was reasonable. State Farm incurred attorneys' fees in the amount of $59,633, sales tax of $3,708.70, and $10,222.63 in litigation expenses defending Wieman. Federated disputes the reasonableness of the attorneys' fees, sales tax, and litigation expenses.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that (the movant) is entitled to judgment as a matter of law." In determining whether summary judgment is warranted, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2005, 91 L.Ed.2d 202 (1986).

The Supreme Court has instructed that "summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 486.

## DISCUSSION

A.  **South Dakota Law**

1.  **Insurance Policy Interpretation**

In this case, the Court is asked to determine whether insurer has the duty to defend or indemnify a former insured individual. The interpretation and construction of the terms of such a contract are questions of law. Grovenburg v. Homestead Ins. Co., 183 F.3d 883, 885 (8th Cir. 1999). The resolution of the issues presently before the Court are "particularly amenable to summary judgment." Id. Moreover, the lack of any factual disputes in this case render it additionally capable of resolution at this stage of the proceedings. In reaching its conclusion, the Court will rely, when possible, upon South Dakota law. See TNT Speed & Sport Center, Inc. v. American States Ins. Co., 114 F.3d 731, 732 (8th Cir. 1997) (stating that the interpretation of an insurance policy is guided by state law).[1]

"The goal of contract interpretation is to see that the mutual intent of the parties is carried into effect." Nelson v. Schellpfeffer, 656 N.W.2d 740, 743 (S.D. 2003). Courts must read the

---

[1] The parties do not appear to dispute the applicability of the laws of South Dakota.

insurance policy as a whole in an effort to give effect to each provision, id., and the language of the contract "must be construed according to the plain meaning of its terms." Biegler v. American Family Mut. Ins. Co., 621 N.W.2d 592, 598-99 (S.D. 2001). If the terms of the policy are clear and explicit, and do not lead to an absurd result, the search for common intent ends. Nelson, 656 N.W.2d at 743. Different rules apply, however, if a contract is ambiguous. A specific provision is ambiguous if it is "'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" Divich v. Divich, 640 N.W.2d 758, 761 (S.D. 2002) (quoting Pesicka v. Pesicka, 618 N.W.2d 725, 727 (S.D. 2000)). Ambiguous provisions are construed against the insurer as the drafter of the contract. Zochert v. National Farmers Union Property & Casualty Co., 576 N.W.2d 531, 532 (S.D. 1998).

### 2.    Duty to Defend and Duty to Indemnify

"An insurer's duty to defend and its duty to pay on a claim are severable and independent duties." State Farm Mut. Auto Ins. Co. v. Wertz, 540 N.W.2d 636, 638 (S.D. 1995). The insurer bears the burden of proving it has no duty to provide a defense for its insured. Biegler, 621 N.W.2d at 599. Satisfaction of this burden requires the insurer to show the disputed claim "clearly falls outside of the policy coverage." Id. The duty to defend is broader than the duty to indemnify for a judgment rendered against the insured. Id. The duty to indemnify, in contrast, "arises only on a showing that the insured contingency occurred." St. Paul Fire and Marine Ins. Co. v. Engelmann, 639 N.W.2d 192, 197 (S.D. 2002). The insured bears the burden of proving liability for damages covered by the policy. See Insurance Co. of North America v. Schultz, 441 N.W.2d 686, 689 (S.D. 1989) (determining that insured initially bears the burden of proving the

applicability of a coverage provision while the insurer has the burden of proving exclusions to coverage).

**B.      Federated's "Claims Made" Policy**

The policy issued by Federated to Wieman was a "claims made" policy which differs substantially from an "occurrence" policy. "Under an occurrences policy, the facts giving rise to the claim must occur during the term of the policy." Lodgenet Entertainment Corp. v. America Int'l. Specialty Lines Ins. Co., 299 F.Supp. 2d 987, 991 (D.S.D. 2003). In contrast, a prerequisite to coverage under a claims made policy is the existence of an actual claim against the insured during a period specified by the terms of the policy. Id. Both parties recognize that the pivotal event for insurance coverage purposes in this matter is the date an actual claim was made against Wieman.

Federated agreed to "pay all sums the insured legally must pay as damages for faulty workmanship, material or design, or products, including consequential loss resulting therefrom." Federated Policy, Part I, § A. Coverage. The coverage extended to all damage resulting from errors, omissions, or negligent acts committed, or for damages caused, by defects in material or products installed or sold by Wieman while acting in a business capacity. Id. As the Court previously identified, a prerequisite to coverage is a claim made against Wieman. The provision in the contract reflecting this requirement states, in relevant part:

> This policy applies to all claims covered hereunder, PROVIDED:
>
> 1.    A claim for damages is first made against any insured, in accordance with paragraph a. below, during the policy period or any Extended Reporting Period we provide under paragraph **F. Extended Reporting Periods**.

> a.  A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
> (i)  When an insured reports to us an event or circumstance that may lead to a claim or loss; or
> (ii)  When notice of such claim is received and recorded by any insured or by us, whichever comes first; or
> (iii)  When we make settlement in accordance with paragraph **A. Coverage**

Id. at Part I, § E. Claims Made Provision, Territory. The term "claim," for the purpose of the contract, "refers to the amount of claim or suit for damages to which this policy applies." Id. at Preamble.[2] An insured was required to notify Federated "as soon as possible" after receiving information concerning an "error, omission, negligent act, or defect." Id. at Part III, § A. Notice of Claim or Suit.

## C. Occurrence of the Prerequisite "Claim"

The question is whether Tennyson's letter to Wieman in 1995 satisfied the claim requirement of Federated's policy. The letter states:

> As you probably recall, I called you a couple of months ago concerning alleged design and installation deficiencies in the numerous HVAC systems at the Mineral Palace Hotel in Deadwood.
>
> I have enclosed a very brief report from Mel Soffra of All Seasons Heating & Air Conditioning of Sturgis. Mel has been servicing the HVAC's unit this year since you apparently decided to quit providing the same.
>
> Mel's report is pretty general in nature. I've spent hours with Mel discussing problems with the individual systems. This report is just a generalization of the types of problems he has encountered and not met (sic) to define each specific problem.

---

[2] Federated's policy includes a brief section explaining the use of the terms in the contract prior to setting forth the coverage and exclusionary provisions. The Court will refer to this unidentified section as the "Preamble."

>To date, the Mineral Palace has spent approximately $25,000 with Mel repairing systems. Additionally, they have lost approximately $20,000 in revenue. Mel is presently preparing an estimate for replacing all 71 of the HVAC units. His initial estimate was in the $130,000 range but I expect this to change because of the problems he contemplates in replacing line sets.
>
>Curt, the serious nature of this problem and the significant financial liability cause me great concern. I am certain that you share this concern. I would ask that you investigate those allegations and respond with the proposed plan of action or at the very least state your position on this matter.
>
>Failing to respond will most certainly result in litigation against yourself and possibly Sun-Rise Construction, Lloyd-Lagow Construction & Development and Doug Valis.
>
>I look forward to hearing from you on this matter.

Affidavit of Charles M. Thompson, Exhibit C.

Resolution of this issue requires the Court to interpret the language in the contract which attempts to provide meaning to the term "claim." Federated argues that a claim requires a specific demand for financial relief or a suit for damages. State Farm believes the term, as it is used in the policy, means notice of a potential error or omission and the consequences which could result.

The use of the term "amount" preceding the second use of "claim" and the use of "damages" subsequent to "suit" within the explanatory language of the Preamble sufficiently informs a policyholder such as Wieman that "claim" refers to financial, rather than injunctive or non-monetary relief. This language is consistent with the coverage provision of the policy, in which Federated agreed to pay all "sums the insured legally must pay as damages" and "to defend any suit asking for these damages." Federated Policy at § A. Coverage.

While it is clear that a claim must involve financial relief, this does not resolve the broader question concerning what type of conduct is sufficient to satisfy the claim prerequisite to insurance coverage. The Court is confident, and the parties agree, that formal litigation is not necessary. This is true because "claim" is differentiated from "suit" in the explanatory language. See Windham Solid Waste Mgmt. Dist. v. National Cas. Co., 146 F.3d 131, 134 (2nd Cir. 1998). The parties also agree that the explanatory language in the Preamble, which includes a restatement of the defined term, does not provide a sufficient definition of the term "claim." The language provides no assistance in determining whether notice of a potential demand or lawsuit is sufficient or whether an actual demand must be made upon the insured. To resolve this issue the Court will consider the plain meaning of the term as well as the interpretation provided by other courts in reconciling similar disputes.

The Court has not found, nor do the parties cite, any South Dakota case defining a "claim" in this type of an insurance policy. In such situations, the Supreme Court of South Dakota often seeks guidance from recognized dictionaries in determining the plain meaning of a term. See Appeal of Sioux Valley Hosp. Ass'n, 513 N.W.2d 562, 564 (S.D. 1994); Land and Marine Developments, Inc. v. Widvey, 546 N.W.2d 380, 382 (S.D. 1996). One dictionary defines the term as a "demand for something as rightful or due." The American Heritage Dictionary of the English Language, 341 (4th Ed. 2000). Another dictionary similarly instructs that the term refers to a "demand for money or property to which one asserts a right." Blacks Law Dictionary, 240 (7th Ed. 1999). The Court finds, therefore, the commonly recognized use of the term supports Federated's interpretation of the term.

In seeking the plain meaning of a disputed term, the Supreme Court of South Dakota also relies upon interpretations provided by courts in other jurisdictions. See St. Paul Fire & Marine Ins. Co. v. Engelmann, 639 N.W.2d 192, 197 (S.D. 2002). The Second Circuit, reviewing the terms of a claims made policy, found that the "plain and ordinary meaning of 'claim' is a demand for specific relief owed because of alleged wrongdoing." Windham, 146 F.3d at 133-134. A review of the authority cited by Windham illustrates that this interpretation of the term is supported by numerous additional jurisdictions. Id. at 134 (citations omitted). Windham and the cases cited therein are persuasive, and the Court finds that a claim must include a specific demand for financial relief due to alleged wrongdoing on behalf of the insured before the coverage provisions within Federated's policy to Wieman are implicated. State Farm simply fails to cite any case with a contrary holding or any case which found notice of a potential future demand or lawsuit sufficient to satisfy the claim requirement in a similar insurance policy.

State Farm argues the use of the term creates an ambiguity which should be resolved in favor of coverage for Wieman. It notes that the term stands alone in some instances and is used in conjunction with "damages" in other instances. This fact does not create an ambiguity in this contract. A claim, as the term is defined by this and other courts, actually has three separate components: alleged damages, alleged wrongdoing on behalf of the insured, and a demand for financial relief. The term "damages," in contrast, is a more definite term which reflects only one component of a claim. The fact that some provisions in the policy use only the word "claim," and others use only "damages," therefore merely reflects that some provisions of the policy are to be applied in a more definite manner than others. The contract is sufficiently clear and State Farm's argument is unavailing.

The remaining question is whether the letter sent by Tennyson to Wieman satisfies the aforementioned requirements. The letter alleges deficiencies in Wieman's work and estimates the expenses, lost revenue, and cost of remedying the problems. The letter also requests a response and threatens litigation. However, clearly absent from the correspondence is any specific demand for financial relief. Wieman was not asked in the letter to pay for the cost of remedying his alleged negligent acts or omissions, to reimburse the MPLP for lost revenue, or even replace the HVAC system. The mere notice of a potential error or omission is not sufficient to constitute a claim. See id. at 134 (citing MGIC Indem. Corp. v. Home State Sav. Ass'n, 797 F.2d 285, 288, (6th Cir. 1986)). Similarly, a request for an explanation does not meet the claim requirement. Id. (citing Hoyt v. St. Paul Fire & Marine Ins. Co., 607 F.2d 864, 866 (9th Cir. 1979)). Finally, a mere threat of potential litigation is also insufficient. Id. (citing In re Ambassador Group Inc. Litig., 830 F. Supp. 147, 155 (E.D.N.Y. 1996)). State Farm simply cannot establish that Wieman received a claim during the effective period of the policy issued by Federated.

Even if the Court assumed Tennyson letter to Wieman qualified as a claim, a similar conclusion concerning Federated's duty to defend and duty to indemnify would be appropriate. The policy issued to Wieman required timely notice of a claim against an insured. Federated Policy, Part III, § A. Notice of Claim or Suit. "[N]otice requirements are included in insurance contracts to protect the insurance company's interest from being prejudiced." Auto-Owners Ins. Co., v. Hansen Housing Inc., 604 N.W.2d 504, 513 (S.D. 2000). Thus, prejudice to the insurer's ability to defend must be present before a notice requirement is strictly enforced. Id.

Federated did not receive notice of the purported claim until October 2002, nearly seven years after the letter was issued to Wieman. It contends that no prejudice occurred because State Farm undertook the defense of the suit against Wieman and incurred over $50,000 in attorneys' fees and $10,000 in litigation costs. The Court disagrees. The underlying lawsuit alleged lost rental income. A significant portion of the lost rental income could potentially have been averted if Federated had the opportunity to become involved and resolved the dispute in a timely manner. More important, the delay in notification prevented Federated from inspecting Wieman's work before the entire HVAC system was replaced. Both Wieman and the manufacturer of the system placed the blame for the problems on the MPLP's operation of the system. The opportunity to inspect the system, however, to determine if Wieman and the manufacturere were correct was lost by the time Federated received notice of the problems. Federated was not notified "as soon as possible" of the purported claim and his failure created sufficient prejudice to warrant a determination that Wieman breached the terms of the policy.[3] No coverage is available under Federated's policy.

## CONCLUSION

Wieman did not receive a "claim" until he received notice of the third-party complaint filed by the joint venture in 2001. Federated has established, therefore, that the claim clearly fell outside the coverage of its policy. Federated had no obligation to defend Wieman. Additionally, State Farm has not established its burden of proving liability for damages covered by Federated's policy. State Farm is not entitled to indemnification in this matter. Accordingly, it is hereby

---

[3] Although Federated raises additional arguments, the Court sees no need to address them.

ORDERED that Federated's Motion for Summary Judgment [doc. #22] is GRANTED.

IT IS FURTHER ORDERED that State Farm's Motion for Summary Judgment [doc. #27] is DENIED.

Dated this 28th day of January, 2005.

BY THE COURT:

_____
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE